UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY L. PHELPS-ROPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09-cv-1296-JCH |
| | ) | |
| CITY OF BERKELEY, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.     INTRODUCTION

Shirley Phelps-Roper (hereinafter referred to as "Plaintiff") filed this action

asserting that § 210.300 of the City of Berkeley Code of Ordinances violates the First

Amendment of the United States Constitution, as incorporated to the states and their

municipalities by the Fourteenth Amendment.  She has filed a three-count complaint

alleging violation of First Amendment protections for free speech (Count I), free exercise

(Count II), and freedom of association (Count III).  Her complaint seeks declaratory and

injunctive relief.  Pursuant to Fed. R. Civ. P. 56(a), she has moved for summary judgment

on Count I of her complaint.

## II.     ARGUMENT

### A.     Summary Judgment Standards

This Court must grant Plaintiff summary judgment if it finds that, viewing the

evidence in the light most favorable to the nonmoving party, there is no genuine issue of

material fact and Plaintiff is entitled to judgment on Count I as a matter of law.

Fed.R.Civ.P. 56(c); *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).  The

moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, then the nonmoving party must come forward and establish specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." *Gray*, 396 F.3d at 1034. Plaintiff meets the standard for summary judgment with respect to Count I of her complaint and, thus, is entitled to summary judgment.

**B.      Section 210.300 of the City of Berkeley Code of Ordinances Violates the Free Speech Provisions of the First Amendment as Incorporated by the Fourteenth Amendment**

The First Amendment states that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The First Amendment applies to the states through the Fourteenth Amendment's due process clause. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925).

Plaintiff conducts peaceful pickets and protest in traditional public *fora*. Statement of Undisputed Material Fact (SUMF) at ¶ 3. She has been chilled from protesting in the City of Berkeley because of the challenged ordinance. *Id.* at ¶ 7. Restrictions on speech in public *fora* are unconstitutional if they (a) are view-point or content based without sufficient justification; (b) fail to meet the test for time, place, and manner restrictions; (c) are substantially overbroad; or (d) are so vague that they fail to give notice of the conduct they proscribe and lend themselves to arbitrary and discriminatory enforcement.

1.    Section  210.300 is invalid as a content-and-viewpoint-based restriction on speech in public *fora*

The purpose and effect of § 210.300 is to target and suppress the viewpoint and content of the message espoused by Plaintiff and other members of her church.  Indeed, Defendant cannot advance a justification for § 210.300 without reference to the content and viewpoint of Plaintiff's protests. *Cf.*, *Hill v. Colorado*, 530 U.S. 703, 720 (2000) (finding statute content-neutral because interest was "justified without reference to the content of regulated speech.").

On its face, § 210.300 targets only pickets and protests related to funerals.[1]  In this respect, Defendant's ordinance is comparable to the ordinance at issue in *R.A.V. v City of St. Paul*, *Minn.*, 505 U.S. 377 (1992).  As construed by the Minnesota Supreme Court, the St. Paul ordinance prohibited only fighting words uttered on the basis of race, color, creed, religion, or gender. *Id.* at 381.  Nevertheless, the Supreme Court of the United States found the law to be facially unconstitutional because "it prohibit[ed] otherwise permitted speech solely on the basis of the subjects the speech addresses." *Id.*  The ordinance applied to fighting words that were about "one of the specified disfavored topics" and not fighting words used in connection with any other idea or topic.  *Id.* at 391. The Court concluded, "The First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects." *Id.*

Like the St. Paul ordinance, § 210.300 is a selective limitation on speech.[2]  It prohibits pickets and protests in an area referenced by the presence of a funeral, memorial

---

[1]    If, in fact, § 210.300 criminalizes all pickets and protests, not just those related to funerals, then it is overbroad.  See, Sub-point II.B.3, *infra.*

[2]    Unlike the St. Paul ordinance, § 210.300 is not limited to fighting words.

service, or funeral procession.  It is speech about the topics related to funerals, memorial

services, and funeral processions that is singled out for prohibition.  Just as the ordinance

at issue in *R.A.V.* prohibited speech about racial supremacy, § 210.300 criminalizes

speech about funerals.

"The principal inquiry in determining content neutrality … is whether the

government has adopted a regulation of speech because of disagreement with the

message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).  No

subsequent Supreme Court case has allowed a speech restriction where the purpose of the

restriction is disagreement with a particular message.

Examination of § 210.300's purpose is appropriate.  "Examination of purpose is a

staple of statutory interpretation that makes up the daily fare of every appellate court in

the country … and governmental purpose is a key element of a good deal of

constitutional doctrine[.]" *McCreary County v. American Civil Liberties Union*, 545 U.S.

844, 862 (2005) (internal citations omitted).  Exploration of purpose is especially

appropriate in cases like this "where an understanding of official objective emerges from

readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of

hearts."  *Id.* at 862.

The purpose of § 210.300 is to silence Plaintiff's viewpoint. *See* SUMF at ¶ 5.

The ordinance was enacted as a response to the pickets conducted by Plaintiff and other

members of her church. *Id.*  This is the very quintessence of viewpoint discrimination.

Section 210.300 is a content-and-viewpoint-based restriction on speech.

Accordingly, it is presumptively unconstitutional and, because Defendant cannot meet its

burden to overcome the presumption, Plaintiff is entitled to summary judgment on Count

I of her complaint.

        2.      Section 210.300 is invalid as a time, place, and manner restriction

Assuming, *arguendo*, the ordinance is content- and viewpoint-neutral, it nonetheless can only validly infringe upon speech in traditionally public *fora* to the extent that the ordinance: (1) serves a significant government interest; (2) is narrowly tailored; and (3) leaves open ample alternative channels of communication. *Ward v. Rock Against Racism*, 491 U.S. at 791.  The failure to meet any one of the criteria is decisive and renders the challenged ordinance unconstitutional.  Section 210.300 satisfies none of the *Ward* criteria.

        a.      Section 210.300 does not advance a significant government interest

On its face, § 210.300 does not suggest what government interest it is supposed to advance.  The only potentially cognizable interest is an interest in protecting funeral attendees from messages that they do not wish to see or hear.   Under controlling precedent, however, such an interest is not a legitimate government interest that would justify speech regulations in public *fora.*

In *Olmer v. City of Lincoln*, the Eighth Circuit was called upon to determine the constitutionality of a city ordinance prohibiting "focused picketing" near religious premises during the period extending from 30 minutes before to 30 minutes after any scheduled "religious activity." *Olmer v. City of Lincoln*, 192 F.3d 1176, 1182 (8th Cir. 1999). The Court held that the city had no significant interest in protecting citizens attending religious services from unwanted communications that was significant enough to outweigh the right to speak freely in public areas. *Id*. at 1181-82.

Just like the ordinance held unconstitutional in *Olmer*, the challenged ordinance aims to shield individuals attending services – often religious services – from unwanted speech on their way to and from a service by creating a buffer zone in which protests are not permitted. The ordinance also expands its reach to screen persons participating in a funeral procession from unwanted speech. Under Eighth Circuit precedent, the challenged ordinance serves no significant government interest sufficient to outweigh Plaintiff's right to free speech.[3] Accordingly, Plaintiff is entitled to summary judgment that § 210.300 is unconstitutional on Count I of her complaint.

b.      Section 210.300 is not narrowly tailored

While there is no government interest in shielding persons attending funerals or driving in funeral processions from exposure to unwanted messages, there could be a legitimate interest in preventing actual interruption of funerals or memorial services grounded in the protection of the free exercise rights of citizens.[4] Nevertheless, the floating buffer zone created by the challenged ordinance is not narrowly tailored to further such an interest. Again, *Olmer* is on point. The *Olmer* Court noted that if protestors intended "to interrupt church services with their own speech, the city could

---

[3]      Eighth Circuit precedent on this point is clear. *See Phelps-Roper v. Nixon*, 545 F.3d 685, 691-92 (8th Cir. 2008), *cert. denied* ____ S.Ct. _____, 2009 WL 959458, 77 USLW 3577 (U.S. Jun 29, 2009)(explaining *Olmer*).  In addition, the Supreme Court has never recognized a government interest in protecting unwilling listeners from even seeing or hearing public speech outside of their homes. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 310 (1975)("Much that we encounter offends our esthetic, if not our political and moral, sensibilities.  Nevertheless, the Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer."); *see also Hill v. Colorado*, 530 U.S. 703, 718 n.25 (2000)(differentiating interest in protecting women seeking medical care from unwanted close physical approaches from protecting a potential listener from hearing a particular message).

[4]      *See, e.g.*, Ark. Code Ann. § 5-71-230 (Supp. 2006)(prohibiting any protest that knowingly targets a funeral, but not a funeral procession, within 150 feet and "[i]ntends to interfere with the funeral" within 30 minutes before to 30 minutes after the funeral).

6

doubtless prosecute them under a general trespass or disturbing-the-peace violation, or if necessary, adopt a more specific prohibition directed against disturbing or interrupting services of worship. The present ordinance goes way beyond that." *Id.* at 1180.

Like the ordinance challenged in *Olmer*, the ordinance here goes "way beyond" protecting funeral activities from interruption or disturbance. Plaintiff does not seek to enter private property, but rather to protest on public streets and sidewalks. SUMF at ¶ 8. Under the challenged ordinance, Plaintiff need not disrupt or interrupt a funeral or procession to be charged criminally. In fact, the challenged ordinance represents a significantly broader restraint on speech than the ordinance found unconstitutional in *Olmer*. It bans all types of picketing and protests, not just "focused picketing," and does so for an hour before and after the event, as opposed to only 30 minutes. Moreover, the ordinance's buffer zone floats around the funeral procession as it moves, whereas the buffer zone in *Olmer* remained fixed. And while the challenged ordinance requires a buffer zone of 300 feet, the unconstitutional buffer zone in *Olmer* was limited to the "public sidewalks or rights of way adjoining [a] religious premises." *Id.* at 1179. Because the far more narrow ordinance at issue in *Olmer* was unconstitutional as not narrowly tailored, so too is Defendant's ordinance.[5]

--------

[5]   In addition to Eighth Circuit precedent, the Supreme Court has never approved a speech restriction as broad as that contained in the challenged ordinance. By its terms, the ordinance prohibits certain speech "within three hundred (300) feet of or about any location at which a funeral is held," with a "funeral" defined as including "the ceremonies, processions[,] and memorial services held in connection with the burial or cremation of the dead." In *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994), the Court upheld the constitutionality of an injunction creating a 36-foot buffer zone around a clinic's entrance. 512 U.S. at 770. But an identically-sized buffer zone on the back and sides of the clinic was struck down as unconstitutional. *Id.* at 772. A prohibition against picketing, demonstrating, or using sound amplification equipment within 300 feet of the residence of clinic staff was also found unconstitutional. *Id*. at 775. In *Schenk v. Pro-Choice Network of Western New York*, 519 U.S. 357 (1997), the Court similarly upheld only a narrow 15-foot buffer zone around clinic doorways, driveways, and driveway entrances. The challenged ordinance is not limited to the area in front of

The ordinance is further not narrowly tailored in that it bans certain types of speech regardless of whether funeral attendees (who the ordinance purports to protect) welcome the speech and provides no exception for accidental breaches of the buffer zone. In *Hill*, by contrast, the buffer zone only applied to unwelcome communications and provided exceptions, allowing protestors to stay in one place if protected individuals passed within eight feet of them. Indeed, it was on the basis of these exceptions, along with the shrinking of the floating buffer zone from 15 to eight feet, that the Court distinguished the buffer zone at issue in *Hill* from the one considered by *Schenk*. *Hill*, 530 U.S. 729-30.

Because the challenged ordinance is not narrowly tailored, Plaintiff is entitled to summary judgment on Court I of her complaint.

     c.  Section 210.300 fails to leave open ample alternative channels for communication of Plaintiff's message

The Supreme Court has held that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. New Jersey,* 308 U.S. 147, 151-52 (1939). Applying *Schneider*,

---

a funeral event, but also includes anywhere 300 feet "of or about" the funeral-related activity. It targets more speech than that occurring directly around an entrance. The buffer zone contained in the challenged ordinance is much more expansive than those approved by the Supreme Court. Indeed, it is broader than the 300-foot buffer declared unconstitutional in *Madsen*.

  *Madsen* did not involve a floating buffer zone, like the challenged ordinance, but in *Schenk*, the Court found that floating buffer zones of a mere 15 feet around individuals and vehicles "burden more speech than necessary." 519 U.S. at 379. Later the Court in *Hill v. Colorado*, 530 U.S. 703 (2000), found a floating buffer zone of eight feet in which people within 100 feet of a clinic could not be approached without their consent was constitutional. Distinguishing *Schenk*, the Court found that unlike a 15-foot buffer, an 8-foot buffer is narrowly tailored because it "allows the speaker to communicate at a 'normal conversational distance.'" *Hill*, 530 U.S. at 726-27. While a buffer zone of eight feet, but no more than 15 feet, may be constitutional when its reach is limited to within 100 feet in front of a fixed location, the floating buffer zone created by the challenged ordinance is not nearly so narrowly tailored.

the Eighth Circuit has found anti-picket regulations do not leave open ample alternative

channels for communication of the information picketers wish to convey at a specific

event. For example in *Kirkeby v. Furness*, the Court recognized:

> [P]laintiffs wish to express an opinion about an individual
> to that individual and others, and they wish to direct their
> message at that individual… Therefore, allowing them to
> picket in the town square or even the next block does not
> satisfy the second *Ward* requirement [of leaving open
> ample alternative channels for communication]. These time
> limits do not give the Plaintiffs enough opportunity to
> direct their intended message at their intended recipients.

92 F.3d 655 (8th Cir. 1996). Unspecified alternatives would not give Plaintiff enough

opportunity to direct her intended message at her intended recipients.

Plaintiff is entitled to summary judgment that § 210.300 is unconstitutional

because it fails to provide ample alternatives for the speech it restricts.

        3.        Section 210.300 is unconstitutionally overbroad

Restrictions that burden or suppress free speech must be narrowly drawn in order

to avoid the chilling effect of legislation. "[T]he First Amendment needs breathing space

and… statutes attempting to restrict or burden the exercise of First Amendment rights

must be narrowly drawn[.]" *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973). The

government may not suppress lawful speech as a means to prevent unlawful speech, and

protected speech does not become unprotected merely because it resembles the latter.

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002).

Even assuming, *arguendo*, § 210.300 is a valid time, place, and manner restriction

on Plaintiff's speech, it is nevertheless overbroad because it similarly limits the speech of

other persons even though their speech is unquestionably protected. The zone created by

the ordinance floats both temporally and geographically. Further, the ban does not limit

itself to fighting words, disruptive protests, or even to protests related in some way to the funerals, memorial services, or funeral processions. *See City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987)(holding that a city ordinance not limited to fighting words or opprobrious language, but which prohibits speech which "in any manner" interrupts a police officer in the performance of his duties is unconstitutionally overbroad).

Rather than targeting a specific place, the ordinance creates a moving "bubble" around funeral events—giving citizens engaged in lawful protests little, or no, notice that their expressive activities will become illegal should a funeral procession pass. Any lawful picket or protest might be transformed into an unlawful protest simply because of timing and geography beyond the picketers' knowledge or control. To ensure total compliance with the ordinance, protesters would have to all but cease protesting near public roads, where a funeral procession may pass by – precisely the chilling effect that the constitutional doctrine of overbreadth seeks to avoid. *See, generally, Ward v. Rock Against Racism*, 491 U.S. 781 (1989)(holding that a complete ban on hand billing, by suppressing a great quantity of speech that does not cause the evils that it seeks to eliminate, whether they be fraud, crime, litter, traffic congestion, or noise, is substantially broader than necessary to achieve the interests justifying it, and thus violates the First Amendment).

In *Ways v. Lincoln, Nebraska*, 274 F. 3d 514 (8th Cir. 2001), a city ordinance prohibiting sexual contact in entertainment businesses was found unconstitutionally overbroad.  The law was overbroad because "it did not exclusively cover conduct in adult entertainment businesses, which has been recognized to cause harmful secondary effects…but also covered conduct in 'any business or commercial establishment,' which

10

could include theater performances, ballet performances, and many other forms of live entertainment." *Id.* at 519.  Like the ordinance in *Ways*, § 210.300 prohibits large amounts of speech that could not possibly have ill effects.  Assuming the ordinance is enforced in a viewpoint-neutral manner, as required by the First Amendment, it not only bans protests that may upset funeral attendees, but also those demonstrations that are supportive of funeral attendees.  Additionally, it could be used to restrict demonstrations completely unrelated to the funeral services.  For example, employees picketing work conditions in front of their employer could be arrested if a funeral were scheduled nearby or, even more arbitrarily, a funeral procession happened to pass.  Any kind of demonstration, regardless of its peaceful nature, could be subject to criminal charges.

Perhaps the most absurd example of the law's broad reach is that funeral attendees who pray within 300 feet of a funeral (or along the route of a funeral procession) would be in violation of the ordinance since "'picketing' can include a wide variety of activities, including prayer." *Veneklase v. City of Fargo*, 248 F.3d 738, 743 (8th Cir. 2001).  Because § 210.300 only requires an intent to protest or picket, not an intent to disturb or interrupt, the ordinance prohibits such prayers if it is truly enforced in a content-neutral manner.

Because § 210.300 is so broad, it reaches an impermissibly large swath of protected speech. The only alternative is that the ordinance effectively leaves to the discretion of the police which types of speech to allow and which to prohibit.  Either result is inconsistent with the fundamental guarantees of the First Amendment.  Accordingly, Plaintiff is entitled to summary judgment that § 210.300 is unconstitutionally overboard.

4.       Section 210.300 is unconstitutionally vague

The Supreme Court has recognized that a law can be impermissibly vague for either of two independent reasons: (1) if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) if it authorizes or encourages arbitrary and discriminatory enforcement. *Chicago v. Morales,* 527 U.S. 41, 56-57 (1999). Section 210.300 is unduly vague for both reasons.

Section 210.300 is unconstitutionally vague because persons of ordinary intelligence cannot determine which expressive activities are prohibited by the statute.  A statute is void-for-vagueness where "'it forbids… the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application….'" *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1202, 1308 (8th Cir. 1997)(*quoting Smith v. Goguen*, 415 U.S. 566, 572 (1974)).  Because the ordinance fails to define "picketing" citizens are left to guess at the contours of the ordinance's criminal prohibition and, thus, are unable to know what conduct will result in arrest and prosecution.

The correct test is not whether individuals can comprehend the words, but whether they can understand what actions will subject them to criminal sanction.  In this regard, *Thornhill v. Alabama*, 310 U.S. 88 (1940), is informative.  In that case, the Supreme Court noted that "picket" can be interpreted in many different ways and faulted the statute at issue because "[t]he vague contours of 'picket' are nowhere delineated." *Id.* at 100-01.  The result is that police officers, judges, and juries will be called upon to determine, subjectively, whether an individual is picketing.  "'A vague law impermissibly

delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis….'" *Stephenson*, 110 F.3d at 1308 (*quoting Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

The vague wording in § 210.300 causes uncertainty about what activities are prohibited in numerous situations.  If Plaintiff were to picket 300 feet away from a funeral ceremony, she nevertheless will have knowingly picketed within 300 feet of a funeral, as defined by the ordinance, if the funeral procession changes course and drives past her.  Individuals standing and praying outside a funeral or along a funeral procession may well be violating the law. *See* § II.B.3, *supra.*  Without any definition of picketing, citizens have no way of knowing which activities are prohibited.  Unlike the ordinance at issue in *Venkelase v. City of Fargo*, 248 F.3d 738 (8th Cir. 2001), for example, § 210.300 fails to define "picketing."  In concluding that the Fargo "ordinance provides fair warning of the conduct that is prohibited[,]" the Eighth Circuit noted that the ordinance defined not only "dwelling" but also "picketing."[6]

Because it leaves undefined key terms that are susceptible to numerous understandings, § 210.300 is unconstitutionally vague and Plaintiff is entitled to summary judgment on Count I of her Complaint.

---

[6]      Section 210.300 also differs from the ordinance in *Venkelase* in that protests and pickets need not be directed at the attendees of the funeral or participants in the funeral procession.  Protestors could violate the ordinance even if it is not the funeral that they are attempting to picket.

Respectfully submitted,


/s/ Anthony E. Rothert
ANTHONY E. ROTHERT #518779
American Civil Liberties Union of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
(314) 361-3635
FAX: (314) 361-3135
E-Mail: tony@aclu-em.org

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon each of the Defendants listed below at the address listed below by placing a copy of the foregoing in a properly addressed, postage pre-paid envelope and placing said envelope in the United States Mail on September 3, 2009:

Octavia Pittman
City Clerk
City of Berkeley
6140 N. Hanley
Berkeley, MO  63134


/s/ Anthony E. Rothert